Chester **MILES** d/b/a Miles
Foundry, Plaintiff,

v.

**U. S. DEPARTMENT OF LABOR,** et
al., Defendants.

Civ. No. 81–1480.

United States District Court,
M. D. Pennsylvania.

Aug. 31, 1982.

Gerald C. Grimaud, Tunkhannock, Pa., for plaintiff.

James W. Walker, Asst. U. S. Atty., Scranton, Pa., Alvin Bramow, Deputy Associate Sol., Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

This is an action brought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.* (1976). In this suit, Plaintiff seeks disclosure of the entire investigatory file compiled by the Occupational Health and Safety Administration (OSHA), in connection with that agency's investigation of an industrial accident involving A. C. Crossley and Sons, Inc. of Susquehanna, Pennsylvania. Plaintiff was the manufacturer of a boiler manhole cover formerly in use at the Crossley sawmill which was allegedly improperly constructed and contributed to the cause of the accident. Plaintiff avers that

it is being "threatened" [1] with a civil suit by A. C. Crossley and Sons, Inc. and is in need of the information procured by OSHA to properly defend itself in any such action. Presently pending before the Court is a motion for summary judgment filed by the Defendants. After carefully considering the parties' briefs and examining the materials withheld *in camera*,[2] the Court will grant this motion.

Preliminarily, we will briefly set forth the procedural history of Plaintiff's FOIA request. By letter dated July 17, 1980, Plaintiff requested "the opportunity to review all files and information ... under the jurisdiction of OSHA or other state, federal or local government agencies" pertaining to the industrial accident in question. By letter dated August 1, 1980, portions of the investigative file were made available to Plaintiff by Leo Carey, OSHA Area Director. Plaintiff then appealed Mr. Carey's partial denial to the Solicitor of Labor, who, by letter dated October 29, 1981, made the remainder of the file available to Plaintiff, except for certain excised items on the documents released.[3] Having exhausted his administrative remedies, Plaintiff filed his Complaint in this Court on December 30, 1981 seeking "all information regarding their [OSHA's] investigation of the incident which occurred at the sawmill owned by A. C. Crossley & Sons, Inc. on February 28, 1979." Complaint (Doc. #1) at 3.

The bases for Defendants' motion for summary judgment as to the remaining materials withheld are exemption 5, 7(C) and 7(D) of the FOIA, 5 U.S.C. §§ 552(b)(5), 552(b)(7)(C), 552(b)(7)(D). We will discuss these statutory exceptions *seriatim*.

## A. Exemption 5

█ Under this provision an agency is permitted to withhold:

"inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

Pursuant to this section, it is well established that an "executive privilege" exists which entitles an agency to withhold from disclosure intragovernmental documents reflecting advisory opinions, recommendations, and deliberations comprising part of the process by which agency decisions are formulated. *Conoco, Inc. v. United States Department of Justice*, 687 F.2d 724 at 726 (3d Cir. 1982); *United States v. Berrigan*, 482 F.2d 171, 181 (3d Cir. 1973); see *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). As recently noted by our Court of Appeals in *Conoco*:

The Supreme Court recognized that Congress intended Exemption 5 to embody an executive privilege with contours broad enough to protect the deliberative and decision-making processes of government. *Sears*, 421 U.S. at 150 [95 S.Ct. at 1516]. "Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions. The quality of a particular agency decision will clearly be affected by the communications received by the decisionmaker on the subject of the decision prior to the time the decision is made." *Id.* at 151 [95 S.Ct. at 1516].

*Conoco, Inc. v. United States Department of Justice, supra*, at 727. Thus, the intent of this exception is to protect the consultative functions of government by furthering open and frank communications within and

---

**1.** Plaintiff first complained to OSHA that it was being "threatened with a suit for damages by A. C. Crossley" in its initial FOIA request, dated July 17, 1980. Over two years later, the central purpose for which the FOIA request has been made remains only a "threat." Plaintiff's Brief in Opposition at 1–2 (Doc. # 15, filed July 30, 1982). To date, no lawsuit has apparently been filed by A. C. Crossley against Plaintiff.

**2.** By Order filed August 9, 1982, the Court directed the Government to submit the materials withheld for an *in camera* review. The Government complied with this directive by letter dated August 26, 1982.

**3.** See Affidavit of Sofia Petters, ¶¶ 10–13.

between agencies of proposed administrative action. *Cooper v. Department of the Navy*, 558 F.2d 274, 276–77 (5th Cir. 1977).

■ In the instant case, the following materials were alleged to be withheld pursuant to Exemption 5:

(a) the CO's [OSHA Compliance Officer] opinion regarding the likelihood of occurrence of future accidents of a similar nature under the same circumstances as existed in that case (as computed on an evaluation scale peculiar to the OSHA enforcement process);

(b) the CO's recommendation regarding a reduction in penalty;

(c) the CO's opinion regarding other possible violations of law;

(d) the CO's recommendation regarding the nature and extent to which OSH Act may have been violated and his opinions and conclusions supporting the recommendation; and

(e) opinions of the compliance officer relating to the manufacture of the boiler plate in terms of the intended use of the plate.

Affidavit of Sofia Petters, ¶ 16. After reviewing *in camera* those portions of the released documents deleted pursuant to this exemption, the Court concurs with the above characterization of this material; moreover, we find this information to be "predecisional" and "recommendatory" in nature and, therefore, squarely within the protection of Exemption 5. See *Lloyd and Henniger v. Marshall*, 526 F.Supp. 485, 486–87 (M.D.Fla.1981); *Docal v. Bennsinger*, 543 F.Supp. 38 (M.D.Pa.1981).

## B. Exemption 7(C)

■ This provision exempts from disclosure:

"investigatory records compiled for enforcement purposes, but only to the extent that the production of such records would . . . (C) constitute an unwarranted invasion of personal privacy . . . ."

The purpose of this exemption is to "protect against the disclosure of the identity of individuals where such disclosure would likely cause embarrassment or harassment to the third party, either because sensitive, derogatory, or intimate personal information about him or her is contained in the file or because the person's cooperation with an . . . investigation would itself prove embarrassing." *Lamont v. Department of Justice*, 475 F.Supp. 761, 776–77 (S.D.N.Y. 1979), see *Lame v. United States Dept. of Justice*, 654 F.2d 917, 923 (3d Cir. 1981). When confronted with the application of this privacy-based exemption, the Court must engage in a *de novo* balancing test, weighing the privacy interest and the extent to which it is invaded, on the one hand, against the public benefit that would result from disclosure, on the other. *Ferri v. Bell*, 645 F.2d 1213, 1217 (3d Cir. 1981); *Committee on Masonic Homes of the R. W. Grande Lodge v. NLRB*, 556 F.2d 214, 220 (3d Cir. 1977).

■ In this case, the names and, in some instances, addresses and telephone numbers of persons contacted during OSHA's investigation or otherwise identified in the file were deleted pursuant to this exemption. Affidavit of Sofia Petters, ¶ 19. A similar situation was presented in *Lloyd and Henninger v. Marshall, supra*, wherein the Court found that:

The privacy interest of the witnesses and employees is substantial, as disclosure of their home addresses would subject them to precisely the harm that exemption 7(C) was intended to prevent. See *McCorstin v. Department of Labor*, 630 F.2d 242 (5th Cir. 1981). The factors weighing in favor of disclosure are slight. "[T]he disclosure provisions of FOIA are not a substitute for discovery, and a party's asserted need for documents in connection with litigation will not affect, one way or the other, a determination of whether disclosure is warranted under FOIA." *Columbia Packing Co. v. United States Department of Agriculture*, 563 F.2d 495 (1st Cir. 1977); see *Sears, supra*, 421 U.S. at

143 n. 10, 95 S.Ct. at 1513 n. 10. This is not a case involving the efficiency or propriety of agency action, and the public interest in having information about such matters is of no weight in the balance. Cf. *Columbia Packing, supra; Deering Milliken, Inc. v. Irving,* 548 F.2d 1131, 1136–37 (4th Cir. 1977). This Court therefore finds that the personal interest of the employees and witnesses in maintaining their privacy outweighs any public interest that might be served by disclosure.

526 F.Supp. at 487. See *Forrester v. U. S. Department of Labor,* 433 F.Supp. 987, 989 (S.D.N.Y.1977), *aff'd,* 591 F.2d 1330 (2d Cir. 1978). We concur with the above analysis in *Lloyd and Henniger* and, after an *in camera* examination of the materials in question, find that the 7(C) exemption was properly invoked in this case.

### C. Exemption 7(D)

■ Section 552(b)(7)(D) embodies the "confidential source" and "confidential information" exemption of the FOIA.[4] The scope of this exemption was examined recently by the Third Circuit in *Lame v. United States Dept. of Justice, supra* :

> Unlike the Section 7(C) privacy exemption, the Section 7(D) exemption does not require any balancing. If the information would reveal the identity of a confidential source, or confidential information given only by a confidential source, the information may be withheld without any consideration of the public interest....
>
> Section 7(D) provides two protections. It protects from disclosure: (a) "the identity of a confidential source" and (b) for a criminal law investigation, "confidential information furnished only by a confidential source,"....

A person is a confidential source "if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." S.Rep.No. 1200, 93d Cong., 2d Sess. 13 (1974) U.S.Code Cong. & Admin.News, 6267, 6291 (Conference Report), *reprinted in Freedom of Information Act and Amendments of 1974* (P.L. 93–502), *Source Book: Legislative History, Texts and Other Documents at 230* (Joint Comm. Print 1975).

654 F.2d at 923 (citations omitted). In this case, the information withheld pursuant to 7(D) is contained on a document entitled "Employee Personal Interview Statement", which expressly states that the interviewees "request that this statement be kept confidential." Moreover, the OSHA Compliance Officer who investigated the industrial accident in question also expressly assured the individuals he contacted that their identities would be held in confidence. Affidavit of Robert Rutt, ¶ 3. Under these circumstances, we conclude that adequate "express assurances of confidentiality" were given and, thus, the persons contacted by the OSHA investigators qualify as "confidential sources" under section 7(D). Consequently, their identity and the information they have provided was properly excised by the Defendant pursuant to this statutory exemption. See *Lloyd and Henniger v. Marshall, supra,* 526 F.Supp. at 487.

### D. Conclusion

For the foregoing reasons, the Court concludes that Plaintiff is not entitled under the FOIA to release of the additional information it has requested from OSHA in this case. Accordingly, we find that Defendants have properly invoked Exemptions 5, 7(C) and 7(D) to shield this material from disclo-

---

4. The 7(D) exemption permits an agency to withhold:

"investigatory records compiled for law enforcement purposes, but only to the extent that the production of such record would ... (D) disclose the identity of a confidential

source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential

sure and, therefore, the Court will grant their motion for summary judgment.[5]

An appropriate Order will be entered.

information furnished only by the confidential source...."

5. In view of this disposition, we need not consider the Government's Motion for a Protective Order.